# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| API, INC. ASBESTOS SETTLEMENT TRUST,<br><br>                                     Plaintiff,<br><br>v.<br><br>ATLANTIC MUTUAL INSURANCE CO.,<br>                                     Defendant. | Civil No. 09-665 (JRT/TNL)<br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |

> John H. Faricy and Vadim Trifel, **FARICY LAW FIRM, P.A.**, 12 South Sixth Street, Suite 211, Minneapolis, MN  55402, for plaintiff.
>
> Jeffrey R. Mulder, John M. Anderson, and Robin Ann Williams, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN  55402-3707, for defendant.

This matter is before the Court on defendant Atlantic Mutual Insurance Company's ("Atlantic's") request for a dismissal or stay of this action due to Atlantic's liquidation in the state of New York.[1]  API, Inc. Asbestos Settlement Trust ("the Trust") commenced this action against Atlantic on March 20, 2009 to recover insurance proceeds and damages from Atlantic.  In 2011, the Supreme Court of the State of New York ("New York Court") issued an Order of Liquidation for Atlantic due to Atlantic's insolvency. Atlantic argues that the Court should stay this action because of the doctrine of abstention

---

[1] Atlantic has not filed a motion to dismiss or stay, but submitted a memorandum to the Court on May 27, 2011 requesting that the Court dismiss or, in the alternative, stay the Trust's case.  As the Court indicated at the hearing on August 11, 2011, the Court will treat this request as a motion for dismissal or a stay.

or dismiss the case because of the Minnesota Insurers Rehabilitation and Liquidation Act (IRLA), Minn. Stat. § 60B.01-.61, and the McCarran-Ferguson Act, 15 U.S.C. § 1012(b). Dismissal is not warranted under the IRLA or the McCarran-Ferguson Act. Because abstention principles suggest that the Trust should present its claims in New York, the Court will stay this action pending the outcome of the liquidation proceeding.

## BACKGROUND

API, Inc. ("API") sold, distributed, and installed insulation materials containing asbestos between the 1940s and 1970s, before entering bankruptcy. (Compl. ¶ 12, Docket No. 1.) The Trust was created as part of API's bankruptcy plan and assumed the rights and liabilities of API with respect to asbestos-related claims. (*Id.* ¶¶ 3, 5.) Atlantic is a New York corporation, with its principal place of business in New York, and is licensed to transact insurance business within the State of Minnesota. (Answer ¶ 8, Docket No. 9.)

According to the Trust, API possessed an insurance policy issued by Atlantic from April 9, 1966 to April 9, 1967, but Atlantic has failed to acknowledge that this policy existed or that the Trust is entitled to any insurance proceeds. (Compl. ¶¶ 17-18.) The Trust seeks declaratory relief in the form of a judicial determination of Atlantic's responsibilities regarding asbestos-related claims brought against API and the Trust. The Trust also brings claims against Atlantic for breach of contract, contribution rights, fraudulent misrepresentation, negligent misrepresentation, bad faith and breach of fiduciary duty, tortious breach of the implied covenant of good faith and fair dealing, and

consumer fraud.  The Trust presents state law claims, invoking the Court's diversity jurisdiction.  *See* 28 U.S.C. § 1332(a).

On September 14, 2010, the New York Court issued an Order of Rehabilitation of Atlantic ("Rehabilitation Order").  (Letter from Atlantic, Ex. 1, at 2, Docket No. 86.) Atlantic consented to this Order pursuant to Article 74 of the New York Insurance Law. (*Id.* at 3.)  The New York Court found that Atlantic was insolvent.  (*Id.* at 2.)

On April 27, 2011, the New York Court issued an Order of Liquidation for Atlantic ("Liquidation Order").  (Letter from Atlantic, Ex. 1, at 1, Docket No. 115.)  The New York Court found that Atlantic remained insolvent, and that further efforts to rehabilitate it would be futile.  (*Id.* at 2.)  It ordered that the rehabilitation proceeding be converted to a liquidation proceeding, and that Atlantic's business and affairs be liquidated in accordance with New York Insurance Law, Article 74.  (*Id.*)  It also vested the Superintendent of the New York State Insurance Department as Liquidator "with all powers and authority expressed or implied under Insurance Law Article 74, in addition to the powers and authority set forth in this Order," including title to Atlantic's assets and rights of action.  (*Id.*)

The Liquidation Order states, "In accordance with Insurance Law Section 7432(b), all claims against [Atlantic] must be presented to the Liquidator within four months of the date of entry of this Order."  (*Id.* at 4.)  It further states that the New York Court "shall retain jurisdiction over this matter for all purposes."  (*Id.* at 5.)  It enjoins any person from "interfering with the Liquidator in the possession, control and management of [Atlantic's] property," from "commencing or prosecuting any actions or proceedings

against [Atlantic]," and from "obtaining preferences, judgment, attachments or other liens . . . against [Atlantic's] assets." (*Id.* at 3.)

The parties have submitted memoranda addressing the effect of the Rehabilitation and Liquidation Orders.  In response to the Rehabilitation Order, Atlantic withdrew its pending summary judgment motion and requested a stay or dismissal of this action. (Letter from Atlantic, Docket No. 86; Letter from Atlantic, Docket No. 88.)  The Trust requested that the Court not stay or dismiss this action.  (Letter from the Trust, Docket No. 87.)

This action includes claims for money damages.  Because of the Liquidation Order, however, the Trust seeks only a judicial determination of the parties' rights and obligations.  The Trust acknowledges that the New York Liquidator maintains control of Atlantic's assets, and that the Trust must submit a claim to the Liquidator in order to obtain those assets.

## DISCUSSION

## I.   DISMISSAL

### A.   IRLA

Atlantic first seeks dismissal based on the IRLA.  A primary purpose of the IRLA is "lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state . . . ."  Minn. Stat. § 60B.01, subd. 4(e).  Pursuant to the IRLA, Minnesota has agreed to defer to certain

aspects of insurance rehabilitation and liquidation proceedings in "reciprocal states." *Id.*

§§ 60B.01-.61. Minnesota defines a reciprocal state as any state

> in which in substance and effect sections 60B.21, subdivision 1; 60B.54, subdivisions 1 and 3; 60B.55; and 60B.57 to 60B.60; are in force, and in which provisions are in force requiring that the commissioner be the receiver of a delinquent insurer, and in which some provision exists for the avoidance of fraudulent conveyances and preferential transfers.

*Id.* § 60B.03, subd. 10. New York is a reciprocal state under the IRLA. New York

incorporates the substance and effect of the sections referenced in section 60B.03. *See*

N.Y. Ins. Law §§ 7405(a-b), 7409(a-b), 7410(a-b), 7412(a-b), 7411(a-b), 7414, 7413(a-

d). It also requires the Superintendent of the New York State Insurance Department to be

the receiver of a delinquent insurer, *id.* § 7405, and provides for the avoidance of

fraudulent conveyances and preferential transfers, *id.* § 7425.

Although New York is a reciprocal state, nothing in the IRLA prohibits the Court

from deciding the *in personam* legal rights and obligations of the parties.[2] The IRLA

only prohibits plaintiffs from commencing or maintaining any "action or proceeding in

the nature of an attachment, garnishment, or levy of execution" against insurers in

liquidation proceedings in a reciprocal state. *See* Minn. Stat § 60B.59. This "language

suggests that an 'action or proceeding' may be maintained **unless** it is 'in the nature of an

attachment, garnishment, or execution.'" *See Hawthorne Sav. F.S.B. v. Reliance Ins. Co.*

---

[2] The IRLA states that "claimants against the insurer who reside within [Minnesota] may file claims either with the ancillary receiver[,]" of which there is not one for Atlantic, "or with the domiciliary liquidator." *See* Minn. Stat § 60B.58, subd. 1. This statute does not preclude the Court from hearing this action. When reading the IRLA as a whole, the Court finds that the "claims" the Trust must file in the New York Court are *in rem* claims.

*of Ill.*, 421 F.3d 835, 855 (9th Cir. 2005) (emphasis original).  The Court will not dismiss the Trust's claims, as they are not an attachment, garnishment, or execution and do not interfere with the *res* of the reciprocal New York Court.  *See Hoiness-LaBar Ins. v. Julien Constr. Co.*, 743 P.2d 1262, 1268-69 (Wyo. 1987) (holding that a rehabilitation proceeding in another state did not require Wyoming to dismiss a legal action, and instead affected only the "collectability and enforceability" of Wyoming's judgments).[3]

The Minnesota Supreme Court has likewise ruled that Minnesota courts may adjudicate *in personam* claims against insolvent insurance companies that do not interfere with the *res* of a reciprocal court.  *Fuhrman v. United Am. Insurors*, 269 N.W.2d 842, 847-48 (Minn. 1978).  As *Fuhrman* stated,

> an action *in personam* to establish the extent of an insolvent's liability on a claim is held not to interfere with the receivership *res*.  By the same token, any attempted attachment or levy against the *res* made in connection with a judgment is normally *in rem* and directly opposed to the court's dominion over the *res*.

*Id.* at 846.  A recent Minnesota state district court decision came to the same conclusion as *Fuhrman*.  *See First State Ins. Co. v. Minn. Mining and Mfg. Co.*, No. C3-00-1644, at *6 (Minn. Dist. Ct. Feb. 16, 2007) (Docket No. 93) ("Minnesota law does not require Minnesota courts to recognize anti-suit injunctions issued by courts of other states."

---

[3] This action also does not warrant dismissal because it involves claims specific to the Trust and not claims common to all Atlantic policyholders.  *See A.P.I., Inc. v. Home Ins. Co.*, 706 F. Supp. 2d 926, 937-38 (D. Minn. 2010) (holding that, when deciding whether to dismiss a claim against an insolvent insurer, courts must consider the uniqueness of the claim and whether it would interfere with a liquidator's possession of the *res*).  *See also* Minn. Stat. § 60B.21, subd. 1; N.Y. Ins. Law § 7405(b) (stating that liquidators possess insolvent insurers' rights of action).

(citing *Fuhrman*, 269 N.W.2d at 842)).  Although *Fuhrman* and *First State* do not discuss the IRLA, they were decided while the IRLA was in effect and do not conflict with the Court's interpretation of Minnesota law.  Because the IRLA does not prohibit the Court from hearing the Trust's *in personam* claims, the Court declines to dismiss this action.

### B.      McCarran-Ferguson Act

Atlantic also seeks dismissal based on the McCarran-Ferguson Act.  The McCarran-Ferguson Act provides that "no Act of Congress shall be construed to invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ."  15 U.S.C § 1012(b).  Atlantic argues that the Court's exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) conflicts with New York's liquidation proceedings.

The McCarran-Ferguson Act does not warrant dismissal of this action.  In *Murff v. Professional Medical Ins. Co.*, 97 F.3d 289, 293 (8th Cir. 1996), the Eighth Circuit held that the McCarran-Ferguson Act did not permit the dismissal of a federal age discrimination claim brought against an insurer in liquidation.  *Murff* held that the policy goal of the McCarran-Ferguson Act of "deferring to state regulation of the insurance industry . . . does not translate into state preemption of federal jurisdiction . . . , but merely counsels that a federal court consider the propriety of abstaining from or staying the federal action."  *Id.*  Accordingly, *Murff* overturned the District Court's dismissal of the action, and remanded it for consideration of abstention and a stay.

Like *Murff*, dismissal is inappropriate in this action, where there is no inherent conflict between New York's liquidation of Atlantic's property and the Court's determination of the rights and obligations of the parties. *See id.* at 292 (holding that the adjudication of legal rights "would not so substantially impair the duty receiver's ability to effect [the insurance company's] liquidation under the Insolvency Act as to run afoul of the proscriptions of the McCarran-Ferguson Act."). Because the IRLA and the McCarran-Ferguson Act do not prohibit the Court from hearing the Trust's claims, the Court will not dismiss them.

## II.   ABSTENTION

### A.   Standard of Review

Atlantic requests, as an alternative to dismissal, that the Court issue a stay based on principles of abstention. Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). They may decline to exercise their jurisdiction where a parallel state action is pending under "exceptional circumstances." *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (citing *Colo. River*, 424 U.S. at 817-18). The Supreme Court has established numerous abstention doctrines, which are not "rigid pigeonholes into which federal courts must try to fit cases, but rather classes of cases in which federal courts may properly exercise their traditional discretion" to abstain.[4] *Night*

---

[4] Atlantic does not specify which doctrine of abstention the Court should apply.

*Clubs, Inc. v. City of Fort Smith, Ark.*, 163 F.3d 475, 479 (8th Cir. 1998) (internal citation and quotation marks omitted).

The Eighth Circuit determined that *Burford* and *Colorado River* abstention principles were relevant to whether a federal court should abstain in favor of an insurer insolvency proceeding. *See Wolfson v. Mut. Benefit Life Ins. Co.*, 51 F.3d 141, 145-46 (8th Cir. 1995) (discussing *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and *Colo. River*, 424 U.S. at 817), *abrogated on other grounds* by *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711, 730 (1996).[5]   Under the *Burford* doctrine, federal courts should abstain when the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colo. River*, 424 U.S. at 814 (citing *Burford*, 319 U.S. at 315).[6]   Under the *Colorado River* doctrine, a federal court has the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. *See id.* at 817-18.

---

[5] In *Quackenbush*, the Supreme Court held that a federal court cannot dismiss or remand an action on the basis of abstention when the relief sought is not equitable or otherwise discretionary. 517 U.S. at 730. *Quackenbush* rejected the holding in *Wolfson* that there should not be rigid distinctions between legal and equitable claims when courts consider abstention. *See id.*; *Wolfson*, 51 F.3d at 147. However, *Quackenbush* stated that stay orders may be appropriate in cases, like *Wolfson*, where the relief sought is not discretionary. *See Quackenbush*, 517 U.S. at 731. Because *Wolfson* affirmed a stay order entered by the District Court, and not a dismissal or remand, the analysis of *Wolfson* discussed here remains good law.

[6] Abstention is also appropriate under *Burford* when "there has been presented difficult questions of state law bearing on policy problems of substantial public important whose importance transcends the result in the case at bar." *Id.* This basis for abstention is inapplicable in this action, where New York will decide Minnesota state law claims that do not invoke difficult policy questions. *See id.*

In *Wolfson*, the Eighth Circuit declined to "compartmentalize[] these doctrines," instead considering the general principles of "federalism, comity, and judicial administration" that underlie them. *Wolfson*, 51 F.3d 141 at 145-46. *Wolfson* stated,

> The first issue in considering abstention in this situation is whether the state court insolvency proceeding provides a mandatory special procedure to adjudicate claims against the insolvent and then distribute the insolvent's inadequate assets among the various classes of successful claimants . . . If there is such a concurrent state court procedure purporting to bind the federal court plaintiff, that brings into play what is generally referred to as the *Colorado River* abstention doctrine, which turns on 'considerations of wise judicial administration . . . conservation of judicial resources and comprehensive disposition of litigation' that are relevant whenever federal and state courts are contemporaneously asked to exercise jurisdiction over the same dispute.

*Id.* at 145 (citations omitted). *Wolfson* also considered other abstention-based principles, such as the *Burford* principle that states should be allowed to establish coherent policies regarding matters of substantial public concern. *See id.* at 144, 146-47. Accordingly, this Court will first consider whether New York has a "mandatory special procedure" for the adjudication of claims against Atlantic, and will then consider other relevant abstention principles.

**B.    New York's mandatory special procedure**

Following *Wolfson*, New York's intent to create a "mandatory special procedure" for the adjudication of all claims against Atlantic is an important consideration under abstention principles. *See id.* at 145. New York's Liquidation Order mandates that all claims against Atlantic be presented to the Liquidator within four months of the Order. (Liquidation Order at 4); *see* N.Y. Ins. Law §§ 7411(a), 7432(b). It directs that Atlantic's

assets be distributed in accordance with the priorities set forth in New York statutes. (Liquidation Order at 4); *see* N.Y. Ins. Law §§ 7433, 7434. This procedure for presenting claims is mandatory in New York because the Order enjoins anyone from "commencing or prosecuting any actions or proceedings" against Atlantic, and states that the New York Court will "retain jurisdiction over this matter for all purposes." (Liquidation Order at 3, 5.) The fact that New York intended to create a mandatory special procedure for adjudicating legal claims against Atlantic weighs in favor of the Court's abstention.

The Court acknowledges that the extent to which the Trust will be able to fully adjudicate its claims in the New York Court is unclear. The Liquidation Order does not describe how the Liquidator will decide whether claimants are entitled to Atlantic's assets, other than referring generally to the "priorities" of New York statutes. (*See id.* at 4.) The Court will presume that the New York Court will allow a full and fair opportunity for the Trust to present its claims. *See* N.Y. Ins. Law §§ 7411(b)(1) ("Controverted claims of claimants residing in reciprocal states may . . . be proved in this state as provided by law . . . ."), 7434(a)(1) (stating that the distribution of the insurer's assets will occur "under the direction of the court"); *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1318 (8th Cir. 1990) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should **assume** that state procedures will afford an adequate remedy, in the absence of **unambiguous** authority to the contrary." (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (emphasis original)). If the Trust discovers that its claims will not be considered by the Liquidator or that the Liquidator's decision will not be fully and fairly reviewed by a court of law,

the Trust may petition this Court to lift its stay.  *See Wolfson*, 51 F.3d at 146 (holding that

state court review is an important consideration for abstention).

### C.   Considerations of wise judicial administration and coherent state policies

The Court must also consider other factors under *Burford* and *Colorado River* that

informed the exercise of abstention under *Wolfson*.  *See id*.  *Wolfson* held that the

exercise of the federal court's concurrent jurisdiction over an insurer in rehabilitation

proceedings damaged a state's interest in the efficient adjudication and satisfaction of

claims against that insolvent insurer with limited assets.  *Id*.  The fact that the claims

brought by the plaintiff in *Wolfson* required only a determination of *in personam* legal

rights, and did not compromise the state court's administration of the *res*, did not sway

the Court that the case should proceed.  *Id*.  The Court concluded that staying the case

"avoid[ed] piecemeal litigation, conserve[d] judicial resources, and further[ed] the cost-

minimizing purposes of rehabilitation," thus abstention was proper.  *Id*. at 147.  It

deferred to the state's "complex statutory regime to marshal the assets of insolvent

insurers for the protection of policyholders and the insuring public."  *Id*. at 146.  The

Court further noted that abstention was appropriate because of a strong federal policy of

deferring to state regulation of the insurance industry, and because the stay occurred

before the parties incurred substantial litigation expenses.  *Id*. at 146-47.

Following the guidance in *Wolfson*, the Court will stay this action.  Through the

Liquidation Order, the New York Court has attempted to create a "coherent policy with

respect to a matter of substantial public concern," the liquidation of insolvent insurance

companies. *See Colo. River*, 424 U.S. at 814 (citing *Burford*, 319 U.S. at 315). Further, considerations of wise judicial administration suggest that "the efficient adjudication and satisfaction of claims against an insolvent insurer is best achieved in a single comprehensive proceeding." *See Wolfson*, 51 F.3d at 146. As in *Wolfson*, this action has not gone to trial, so the parties have avoided significant litigation expenses. *See id.* Also as in *Wolfson*, Atlantic has limited assets to be spread among claimants, creating an interest in preserving its funds through the avoidance of piecemeal litigation. *See id.*

The Trust argues that this Court, sitting in diversity jurisdiction, should not stay this action because of the Minnesota Supreme Court's analysis in *Fuhrman*. The Court will not adhere to the analysis in *Fuhrman*, however, because abstention is a procedural doctrine that is not governed by state law. *See, e.g.*, *Gross v. Weingarten*, 217 F.3d 208, 222-25 (4th Cir. 2000) (analyzing federal abstention principles in action against insurer subject to state insolvency proceedings). Accordingly, the Court will stay this action pending the outcome of the liquidation proceedings in the New York Court.[7]

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Atlantic's motion for a stay is **GRANTED.**

---

[7] Atlantic also requests that the Court issue a stay on the basis of comity. Because the Court has issued a stay on the basis of abstention, and comity is a closely related consideration, the Court will not specifically discuss comity. *See Wolfson*, 51 F.3d at 144 (noting that abstention doctrines are grounded, in part, in considerations of comity).

2.   Atlantic's motion to dismiss is **DENIED.**

3.   Plaintiff's claims are **STAYED** pending the outcome of the liquidation proceeding at the Supreme Court of the State of New York, New York County, Index No. 402424/10.

4.   Both parties shall be under an obligation to notify this Court by written correspondence within fifteen (15) days after the Supreme Court of the State of New York has entered an Order deciding Plaintiff's claims against Atlantic.

DATED:  November 2, 2011                      ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                      United States District Judge